### PEOPLE *v.* WHITSITT.

1. Criminal Law—Statement of Facts—Supreme Court.
    Statement of facts by appellant in criminal case, not traversed
    by the people, is accepted for purposes of decision by Supreme
    Court (Court Rules No 67, § 2, No 68, as amended [1945]).

2. Same—Benefit of Counsel—Due Process—Minors—Murder—
Armed Robbery.
    It was a denial of due process to 17-year-old defendant in prosecution of him and 3 older men for first-degree murder and
    armed robbery not to provide him with counsel at time plea
    of guilty was accepted, where record then made shows he
    was not informed of right to counsel or that such counsel
    was offered at county expense if he lacked funds, and circumstances were such that so far as such young defendant
    is concerned it is not apparent that any homicidal intent on
    his part was disclosed at the hearing before the sentencing
    judge held on the same day as arraignment when it was
    sought to determine the degree of crime (US Const, am 14;
    CL 1948, §§ 750.316, 750.529).

3. Same—Benefit of Counsel—Minors—Acceptance of Plea of
Guilty.
    A greater burden is imposed on courts and prosecutors when
    the person accused of crime is a minor than in other cases as

---

References for Points in Headnotes

[2] 14 Am Jur, Criminal Law § 167.
    Duty to advise accused as to right to assistance of counsel. 3
    ALR2d 1003.
    Plea of guilty without advice of counsel. 149 ALR 1403.
    Absence of counsel for accused at time of sentence as requiring
    vacation thereof or other relief. 20 ALR2d 1240.
[3–5] 14 Am Jur, Criminal Law § 173.

there must be no doubt that the defendant understands his rights including that of the aid and advice of counsel before his plea of guilty is accepted.

4. SAME—WAIVER OF COUNSEL—DUE PROCESS.

A finding of waiver of counsel, offered to one accused of crime is not to be made lightly, where the right to counsel is of such critical importance as to be an element of due process under the Constitution of the United States (US Const, am 14).

5. SAME—WAIVER OF COUNSEL.

Appellant, who was 17 years of age at time of prosecution of him and 3 others for murder and armed robbery, *held*, not to have waived the right to counsel under record presented on appeal from denial of fifth motion for new trial by successor circuit judge, where it appears he only did so because the other 3 defendants were so inclined and the circumstances were such as to show he had not intelligently and understandingly waived the benefit of counsel and his rights could not have been fairly protected without counsel.

Appeal from Macomb; Noe (Alton H.), J. Submitted April 14, 1960. (Docket No. 58, Calendar No. 48,078.) Decided June 6, 1960.

Louis Whitsitt, while a minor, pleaded guilty to murder and was given life sentence. Subsequent delayed motion to set aside judgment of conviction and sentence and for new trial was denied. Reversed and remanded.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Cecil A. Byers,* Prosecuting Attorney, *Roy W. Rogensues* and *Emil E. Cardamone,* Assistant Prosecuting Attorneys, for the people.

*Robert N. Smiley,* for defendant.

BLACK, J. Counsel for appellant (defendant Louis Whitsitt) has favored us with an excellent and helpful brief. The statement of facts set forth therein

is sufficient as well as accurate, and, since it is not traversed by the people according to the requirements of Court Rule No 68 (1945),[1] I would accept it for the purposes of present decision (see section 2 of Court Rule No 67 [1945], as amended April 15, 1959, effective July 1, 1959.[2])

So much of appellant's said statement as is deemed requisite for present purposes is quoted as follows:

"Louis Whitsitt, a 17-year-old youth, was brought before Macomb county circuit judge Neil E. Reid at 5 p.m. on Saturday, September 9, 1933, along with 3 other codefendants. They 'were not represented by counsel.' The information filed against them (after they waived examination on the same afternoon) charged them with the murder[3] of one Joseph Nesbitt (first count), and armed robbery[4] (second count), in taking from Mr. Nesbitt a 1931 Buick automobile and $87 cash on September 7, 1933.

"After each defendant pleaded guilty, the court took testimony from the defendants and made a determination that the crime was first-degree murder, and sentenced Louis Whitsitt, appellant, and the other defendants to life imprisonment, to be served concurrently with a 45-to-90 year sentence (imposed in Detroit recorder's court) on the same day upon guilty pleas to kidnapping Mr. Nesbitt (also without benefit of counsel).

"The 4 defendants (Robert Frazer, Robert Buffa, Douglas Whitsitt, and Louis Whitsitt) entered a Buick vehicle occupied by Joseph Nesbitt (Buffa thought it was about 11 p.m.) on September 7, 1933, at Chalmers and East Jefferson streets in the city of Detroit, Wayne county. Robert Frazer, the only one who had a gun, ordered Mr. Nesbitt to move

---

[1] Amendments, 1956, did not affect this provision. See 347 Mich xxiv.—Reporter.

[2] See 355 Mich xiv.—Reporter.

[3] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—Reporter.

[4] CL 1948, § 750.529 (Stat Ann 1954 Rev § 28.797).—Reporter.

over, and Buffa to sit at the steering wheel and the 2 Whitsitt boys in the back seat. Buffa drove out Jefferson and then on Gratiot into Macomb county to a side road 'this side of Muttonville' where a robbery and shooting occurred. Frazer ordered 'all to get out of the car,' but Louis Whitsitt stayed in the back seat. Frazer told Buffa to search Mr. Nesbitt and Buffa took his watch and pocketbook and gave them to Frazer. Frazer 'just shot him after that.' Buffa had 'to jump on one side to keep from getting hit.' Mr. Nesbitt was left lying in the road. The judge said he was shot 3 times. Frazer ordered them back into the car. Buffa drove the car out from Detroit, and back to Detroit after the shooting, and did not stop anywhere on the way back to Detroit.

"Douglas Whitsitt denied there was any plan to rob Mr. Nesbitt, or to shoot him to cover up—that the only plan was to steal a car in Detroit for a ride to Port Huron where he and his brother Louis lived. They were going to take Mr. Nesbitt to the city limits and let him walk back. Robert Buffa testified that Louis Whitsitt was not part of a plan for a holdup, but 'just to take the car.' Douglas Whitsitt testified that Louis Whitsitt 'didn't have anything to do with it.' Once, Robert Buffa started to testify that Louis Whitsitt was not part of the party—'but Louis there, he didn't,' and then Buffa was interrupted by the judge. Buffa further said he wanted to leave Mr. Nesbitt to walk back, and 'all at once I heard 6 shots.' Douglas Whitsitt tried to take the gun away from Frazer. Frazer testified that he was under the influence of liquor and didn't know what he was doing—and he was not conscious of the fact he was shooting the man. He remembered it later, but 'everything went out nearly at once.' Louis Whitsitt testified that it was the first time he had ever been in anything, and he didn't know there was to be a holdup, that the agreement was to get a car—and further that Frazer was drunk, and he was half crazy.

"After each defendant pleaded guilty, the judge asked each defendant whether he wanted an attorney, but did not inform them that they had a right to counsel, nor did he offer to appoint counsel at county expense if they lacked funds. * * *

"Appellant's last new trial motion was heard and denied on December 16, 1957, by Judge Alton Noe, successor to Judge Reid. Judge Noe also denied previous motions in 1947, 1949, 1950, and 1952. In substance, Judge Noe's opinions are that appellant knew the 4 defendants planned to take a car in Detroit; that he was present in the car in Macomb county at the time of the robbery and received some of the cash; that his failure to notify anyone that Mr. Nesbitt was lying on the road wounded resulted in his death; that a 'rather detailed explanation of his rights was given him by the court'; that he 'was accorded every right to which he was entitled' and opportunity to have counsel; that he waived his right to counsel, and that his guilty plea 'was based upon a sufficient knowledge of his constitutional guaranties,' and that in Michigan the 'State is not compelled to provide counsel for a respondent.' "

Appellant applied in due time for leave to review the order of December 16, 1957, by which his latest motion for new trial was denied. December 2, 1958, we granted the application, following consideration of a memorandum—prepared by a member of the Court—reciting in part as follows:

"Whitsitt's main contention is that if he had been given a clear opportunity to have counsel, he would have been able to properly establish defenses available to him at the murder charge. He asserts that because of his youth and lack of understanding of the legal processes, counsel should have been provided for him."

I conclude on review of the briefs and joint appendix that appellant is right in such regard; that counsel should have been provided for him on the occa-

sion of arraignment and before acceptance of plea, and that the so-called "totality of circumstances" shown here discloses rather forcibly that appellant has not as yet received the process that is due as a lawful condition of sentence for guilt as charged.

No lawyer of competence (we must presume the competence of counsel if and when furnished on order of one of our circuit judges) would have advised this youthful defendant to plead guilty to our most serious crime. The reason is record-apparent. The investigative facts upon which the sentencing judge assumed to accept appellant's plea were hurriedly adduced, late in the one day of dual arraignment and dual sentence of all 4 defendants in separate courts, during the course of the statutorily required proceeding "to determine the degree of the crime" (CL 1948, § 750.318, CL 1929, § 16710 [Stat Ann and Stat Ann 1954 Rev § 28.550]). No one undertook to explain, to appellant (he remained, so far as the record discloses, in the car without knowledge of any homicidal intent or purpose of codefendant Robert Frazer), the elements distinguishing first-degree murder from lesser offenses of which he was or might have been guilty. No one bothered to suggest that the proof then before the sentencing judge might be insufficient, as a matter of law, to justify conviction of appellant as charged. No one, except 2 of the other defendants, suggested that "the boy" be given "a break." To this the judge replied "There is only one sentence, under the statute."[5]

This is not to say, of course, that appellant might not then or may not now be convicted of murder in

[5] Defendant Douglas Whitsitt, appellant's older brother, testified without dispute—in answer to a question of the judge—as follows:

"*The Court:* Anything further you want to say?

"*A.* I would like to say Louis didn't have anything to do with it; he stayed in the car, and he didn't do anything, and didn't take any of the money off the man.

"*Q.* Is that all you desire to say?     . .

"*A.* Yes."

the first degree of Mr. Nesbitt. It is to say that the hearing before the sentencing judge disclosed no proof that the "degree of the crime" of all defendants was the same.

Here, as in *Moore* v. *Michigan,* 355 US 155, 160 (78 S Ct 191, 2 L ed 2d 167), "The record shows possible defenses which might reasonably have been asserted at trial, but the extent of their availability raised questions of considerable technical difficulty obviously beyond his [the defendant's] capacity to comprehend." Further, and as said in *Moore, supra* (same page):

"With the aid of counsel, the petitioner, who, as we have said, neither testified himself in the proceeding nor cross-examined the prosecution's witnesses, might have done much to establish a lesser degree of the substantive crime, or to establish facts and make arguments which would have mitigated the sentence."

By force of intervening decisions of the supreme court, notably *Moore* v. *Michigan, supra,* and *Crooker* v. *California,* 357 US 433 (78 S Ct 1287, 2 L ed2d 1448), it must now be said that Mr. Justice BUSHNELL's dissent, in *People* v. *Crandell,* 270 Mich 124, 130–134,[6] has become the established law of Michigan. So far as concerns a youthful first-time defendant charged with our most serious crime, it is the duty of judicial officers to see that competent legal representation is provided, certainly by and from the time of arraignment in the court which is duty-charged by present Court Rule No 35-A

---

[6] The relevant essence of Justice BUSHNELL's opinion appears thus (p 132).

"Constitutional principles aside, the simplest principles of fairness and decency, summarized under the name of 'justice,' impose even a greater burden on courts and prosecutors when the accused is a minor than in other cases; there must be no doubt that the defendant understands his rights, including that of the aid and advice of counsel before his plea is accepted."

(1945).[7]  Constitutional due process has never admitted less, especially where it is possible (if not manifest) that the prisoner at the bar has been charged with a crime more heinous than that which he apparently has committed.

It is said, however, that appellant waived the benefit of counsel in this case.  I do not agree—factually or legally—and preface presentation of the facts (they speak for themselves) with this passage taken from *Moore* v. *Michigan, supra,* (p 161) :

"Where the right to counsel is of such critical importance as to be an element of due process under the Fourteenth Amendment, a finding of waiver is not lightly to be made."

Submitted as follows is the sole record upon which it is said that appellant "intelligently and understandingly" waived the advices and aid of counsel:

"*Q. [By the Court]* You are here without an attorney.  Do you desire to have an attorney to represent you in this matter, or are you willing we should go ahead with the case without one?
"*A.* I think that we may, Your Honor.
"*Q.* You say that 'we may'?
"*A.* Yes, sir.
"*Q.* Do you want an attorney now?
"*A.* I would rather leave it up to the other 3 boys, if they wish it.
"*Q.* The other 3, I understand, do not desire an attorney, and they have not had an attorney.
"*A.* All right.
"*Q.* Is it all right with you?
"*A.* Yes, sir.
"*Q.* To go ahead, is that what you mean?
"*A.* Yes, sir.
"*The Court:* The plea is accepted."

[7] Adopted June 4, 1947.  See 318 Mich xxxix.—REPORTER.

·.·This·· showing, compared with the corresponding showing which came to scrutiny in *Moore*, suggests that we are presently bound to reach the same conclusion (as in *Moore*). If appellant "waived" the right to counsel, he did so only because the other 3 defendants were so inclined. This, to me, was no more an intelligent and understandable waiver of his federally-assured right than was Moore's stated desire "that he wanted to get the matter over with." Less so, in fact. The status of the 3 older and definitely implicated defendants differed legally from that of appellant.

*Moore* quotes and follows one of the rules laid down in *Pennsylvania, ex rel. Herman,* v. *Claudy,* 350 US 116, 118 (76 S Ct 223, 100 L ed 126), that "where a person convicted in a State court has not intelligently and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel, the due process clause invalidates his conviction." I would do the same in this case of Whitsitt.

When appellant was arraigned in the Macomb circuit—a quarter century ago—he was entitled by the fard of constitutional due process to the advices of competent counsel before being asked to plead to this information. The record, fortified as it is "by the inferences which may be drawn from the age of petitioner," shows that he did not validly waive his right to the aid of counsel. His plea, then, was and is now a nullity.

I hold that appellant's motion in the court below was erroneously denied and therefore vote to reverse and remand for trial.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.