PEOPLE v. WHITSITT.

1. CRIMINAL LAW—RIGHT TO COUNSEL—WAIVER—DUE PROCESS.
   One accused of crime under circumstances showing that his rights could not have been fairly protected without counsel and who has not intelligently and understandingly waived the benefit of counsel and has not had counsel is denied due process of law.

2. SAME—RIGHT TO COUNSEL—DUE PROCESS.
   Defendant charged with murder and armed robbery who entered plea of guilty without benefit of counsel was denied due process of law thereby, where it does not appear that he was informed of his constitutional rights, including the right to counsel before being asked to plead, and when he attempted to assert mitigating circumstances the trial court advised him of the futility of making such remarks.

Appeal from Macomb; Noe (Alton H.), J. Submitted April 26, 1962. (Docket No. 68, Calendar No. 49,506.) Decided May 18, 1962.

Douglas Whitsitt pleaded guilty to murder and was given life sentence. Subsequent delayed motion to set aside conviction and sentence and for new trial was denied. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *James R. Ramsey,* Assistant

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 14 Am Jur, Criminal Law § 174.
  Plea of guilty without advice of counsel. 149 ALR 1403:
  Duty to advise accused of right to assistance of counsel. 3 ALR2d 1003.

Attorney General, *George Parris,* Prosecuting Attorney, and *Daniel Cosmenco,* Assistant Prosecuting Attorney, for the people.

*Robert N. Smiley,* for defendant.

KAVANAGH, J. Defendant appeals from an order denying a motion for new trial. He is presently serving a life sentence in the State prison of Southern Michigan imposed by a Macomb county circuit judge on September 9, 1933, following defendant's plea of guilty to a charge of murder and armed robbery.

Defendant contends he was denied due process of law under the Fourteenth Amendment to the Federal Constitution since he was deprived of counsel at the time of arraignment and sentencing.

Douglas Whitsitt, the defendant, is a brother of Louis Whitsitt, whose conviction and sentence on similar charges were set aside and a new trial granted by this Court in the case of *People* v. *Whitsitt,* 359 Mich 656.

Defendant Douglas Whitsitt was a 20-year-old Canadian citizen. He was charged, along with his brother Louis and 2 others—Robert Buffa and Robert Frazer—with murder during the commission of a felony of armed robbery. Detailed facts are set forth in the case of Louis Whitsitt, *supra.*

At about 11 p.m., on September 7, 1933, the Whitsitt brothers, Buffa, and Frazer stopped a Buick automobile, occupied by one Joseph Nesbitt, near Chalmers and East Jefferson streets in the city of Detroit. The 4 had previously agreed to steal a car for the purpose of making a trip to Port Huron, where the Whitsitt boys lived. Robert Buffa drove the automobile out into Macomb county and on a side road, where it was intended Joseph Nesbitt

would be let out of the car and permitted to return to Detroit.

Robert Frazer was drinking heavily. He carried a gun. Douglas Whitsitt, Robert Frazer, and Robert Buffa got out of the car with Mr. Nesbitt. Frazer ordered Buffa to search Nesbitt. Buffa took Nesbitt's watch and pocketbook and turned them over to Frazer. Frazer then shot Nesbitt. Buffa testified he had to jump to one side to keep from getting hit. Douglas Whitsitt testified he was wrestling with Frazer trying to get the gun away from him when Frazer shot Nesbitt; that he did not know there was to be a robbery or shooting; that the agreement was only to steal a car.

The morning of September 9, 1933, the 4 were arraigned on a kidnapping charge in the recorder's court of the city of Detroit, and each was sentenced to the State prison for 45 to 90 years. They were then examined at length by police with respect to whether they had participated in other crimes. Eventually they were brought to Macomb county, at about 5 p.m., on Saturday, September 9, 1933.

An information was filed against them, charging each with the murder of one Joseph Nesbitt (first count) and armed robbery (second count). They were arraigned before a justice of the peace in the city of Mt. Clemens, where each waived examination. They were immediately taken to another floor of the courthouse and arraigned before the circuit judge. On arraignment, without having been informed of their constitutional rights, including the *right* to counsel, they were asked to plead. The brief colloquy between the court and defendant Douglas Whitsitt was as follows:

"*The Court:* You heard the reading of the information, Mr. Whitsitt?

"*A.* Yes, sir.

"*Q.* To that information what do you plead, guilty or not guilty?

"*A.* Guilty.

"*Q.* You plead guilty?

"*A.* Yes, your Honor.

"*Q.* You plead guilty of your own free will?

"*A.* Yes, sir.

"*Q.* Has there been any threat or promise or inducement made or held out by any person to cause you to plead guilty?

"*A.* No, sir.

"*Q.* You plead guilty simply because it is true, you are guilty?

"*A.* Yes, sir."

The court then, almost in the nature of an afterthought, said:

"*Q.* Do you desire an attorney to represent you?

"*A.* No."

After each of the defendants pleaded guilty, the court took testimony from them in order to determine the degree of crime. In each instance he determined the crime to be first degree murder and sentenced all 4 to life imprisonment, to be served concurrently with the previous sentence of 45 to 90 years imposed the same day on the kidnapping charge.

A serious question arises as to whether we actually have a transcript of the original hearings at the time of arraignment and sentence. A letter addressed to the clerk of the Supreme Court by the chief deputy clerk of Macomb county under date of March 5, 1962, advised the clerk that no transcript of the original hearings was ever filed in the county clerk's office. The joint appendix discloses that the only record of the proceedings is an uncertified copy found in the prosecuting attorney's file.

What was said by Justice BLACK in *People* v. *Whitsitt, supra,* 661, "that the so-called 'totality of cir-

cumstances' shown here discloses rather forcibly that appellant has not as yet received the process that is due as a lawful condition of sentence for guilt as charged," is applicable in the instant case.

No better illustration of quick justice improvidently administered, without regard to the constitutional rights of defendant, could be imagined. Defendant Douglas Whitsitt not only had no knowledge of any homicidal intent or purpose of codefendant Robert Frazer, but the skimpy record we have before us indicates that when he observed Frazer raising the gun he tried to grab it out of his hand and take it away from him. These facts, along with all the other circumstances and facts, might have properly been considered in distinguishing first degree murder from lesser offenses for which he might have been guilty. No attorney was present to represent defendant and when he attempted to assert mitigating circumstances, the court, rather than considering those circumstances, advised him of the futility of making such remarks.

In *Moore* v. *Michigan,* 355 US 155, 160 (78 S Ct 191, 2 L ed 2d 167), the United States supreme court said:

"The record shows possible defenses which might reasonably have been asserted at trial, but the extent of their availability raised questions of considerable technical difficulty obviously beyond his [the defendant's] capacity to comprehend."

The rule established in *Pennsylvania, ex rel. Herman,* v. *Claudy,* 350 US 116, 118 (76 S Ct 223, 100 L ed 126), and subsequently followed many times, is "where a person convicted in a State court has not intelligently and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected with-

out counsel, the due process clause invalidates his conviction."

The constitutional protections, Federal and State, extend to all equally—to those justly suspected or accused as well as to the innocent.

When defendant was arraigned in the Macomb circuit he was entitled by constitutional due process to the advice of competent counsel before being asked to plead to the information. The record, such as we have, shows that he did not intelligently and understandingly waive his right to the aid of counsel. See *Von Moltke* v. *Gillies,* 332 US 708 (68 S Ct 316, 92 L ed 309), where Justice Black commented as follows (pp 723, 724):

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' (*Johnson* v. *Zerbst,* 304 US 458, 465 [58 S Ct 1019, 82 L ed 1461, 146 ALR 357]; *Adams* v. *United States, ex rel. McCann,* 317 US 269, 270 [63 S Ct 236, 87 L ed 268, 143 ALR 435].) To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel (*Johnson* v. *Zerbst, supra,* 464; *Glasser* v. *United States,* 315 US 60, 70 [62 S Ct 457, 86 L ed 680]), a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circum-

stances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

See, also, the discussion in both the majority and concurring opinions of the supreme court of the United States in *Carnley* v. *Cochran,* 369 US 506 (82 S Ct 884, 8 L ed 2d 70),* in which the court reversed a conviction of petitioner in a Florida State court by reason of the deprivation of his right to the assistance of counsel for his defense guaranteed by the Fourteenth Amendment to our Federal Constitution.

Defendant's motion in the court below was erroneously denied. The order denying defendant's motion for new trial is reversed and the case remanded for trial.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., did not sit.

---

* Decided April 30, 1962.