PEOPLE *v.* McKINLEY.

(McKINLEY *v.* IOSCO CIRCUIT JUDGE.)

OPINION OF THE COURT.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO APPELLATE COUNSEL — REQUEST — WAIVER.

The Supreme Court is bound by a statement by the United States Supreme Court holding that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend upon a request and that when a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right.

REFERENCES FOR POINTS IN HEADNOTES

[1–8] 21 Am Jur 2d, Criminal Law §§ 316–319.
  Constitutionally protected right of indigent accused to appointment of counsel in state court prosecution.   93 ALR2d 747.
[5] Right of indigent defendant in criminal case to aid of state as regards new trial or appeal.   55 ALR2d 1072.
[9, 10] 16 Am Jur 2d, Constitutional Law § 26.

2. Constitutional Law — Waiver — Presumption — Words and Phrases.

   Waiver is the intentional relinquishment or abandonment of a known right and the Supreme Court indulges every reasonable presumption against waiver of constitutional rights.

3. Constitutional Law—Waiver.

   Intelligent waiver of constitutional rights must depend on the considered choice of the defendant and may not be made by counsel without defendant's participation.

4. Constitutional Law—Waiver.

   Whether there has been a knowing and intelligent waiver of a constitutional right must depend upon the facts and circumstances of each particular case.

5. Constitutional Law — Post-conviction Proceedings — Assistance of Counsel — Waiver.

   Indigent defendant's failure to specifically request appointment of counsel for post-conviction proceedings within the 60-day period permitted for appeal of right did not constitute a knowing, intelligent waiver of his right to appointment of appellate counsel, where defendant, by his timely request for a transcript, indicated a desire for post-conviction relief, where appointed counsel was essential for a timely and proper securing of defendant's post-conviction rights, and where, although defendant was technically advised of various post-conviction remedies, it is apparent from the record and should have been apparent to the trial judge from his colloquies with defendant that defendant desired post-conviction counsel but that, because of his ignorance and confusion, he failed to comprehend the substantive or procedural nature of available post-conviction remedies.

6. Constitutional Law — Post-conviction Proceedings — Assistance of Counsel — Waiver — Statements of Counsel.

   Trial counsel's statement to the court that defendant had not requested his services for post-conviction proceedings can be taken at most to indicate only that defendant did not desire trial counsel to continue as his appellate counsel and not that defendant intended to waive his right to appointment of counsel and proceed *in propria persona.*

7. Criminal Law—Post-conviction Proceedings—Assistance of Counsel—Waiver—Duty of Trial Court.

   Trial judge who realizes or should realize after conviction and within the time permitted for appeal of right that the defend-

ant desires to pursue post-conviction relief has a duty to ascertain that that waiver of the right of appeal and the assistance of appellate counsel is understandingly and knowingly made; hence, it was error for the trial court to ignore defendant's manifest desire to appeal and rely exclusively on trial counsel to inform defendant of all of his constitutional post-conviction rights.

CONCURRING OPINION

BLACK, J.

8. CRIMINAL LAW — COUNSEL — APPELLATE COUNSEL — WAIVER — REQUEST.

*The Supreme Court is bound by a statement by the United States Supreme Court holding that even if a request by a defendant for counsel on appeal had not been made, its absence would not amount to a waiver of defendant's rights.*

9. APPEAL AND ERROR—APPEAL OF RIGHT—CONSTITUTIONAL AMENDMENT.

*The current, prevalent, and ever-mounting encouragement of Fourteenth Amendment appeals and the resultant expenses incurred for appellate services is a profligate drain upon county and state treasuries and can be stopped only by a constitutional amendment barring civil and criminal appeals of right and limiting them to such as are grantable on application.*

10. APPEAL AND ERROR—APPEAL OF RIGHT.

*A constitutional amendment barring civil and criminal appeals of right and limiting appeals to those which are grantable upon application is both due and fair and would afford our state and its subdivisions the same protection against frivolity and squander which insulates the United States Supreme Court.*

Appeal from Court of Appeals, Division 3, Lesinski, C. J., and J. H. Gillis and Quinn, JJ., denying superintending control over Iosco, Allan C. Miller, J. Submitted March 11, 1970. (Calendar No. 25, Docket No. 52,256–1/2.) Decided May 4, 1970.

Application for writ of habeas corpus filed in the Court of Appeals by Louis McKinley, hereafter

called "defendant". Application treated as a complaint for superintending control and denied by Court of Appeals. Defendant appeals. Remanded to trial court for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stewart H. Freeman,* Assistant Attorney General, and *Kenneth J. Myles,* Prosecuting Attorney, for the people.

*Parks, Church & Wyble (J. Richard Robinson,* of counsel), for defendant.

T. M. KAVANAGH, J. Defendant was convicted by a jury of robbery while "being then and there armed with a dangerous weapon, to-wit: with  *  *  *  a brown beer bottle  *  *  *  "[1] and was sentenced on August 29, 1966, to a term of 8 to 20 years. At that time the trial judge informed defendant that:

"You are given a form that you can use to initiate an appeal within 60 days from the date hereof. You have a right to request the Court to appoint an attorney for you, and to ask for a copy of the transcript. Mr. Freel (defendant's trial counsel) will advise you in more detail about this request."

On September 26, 1966, defendant's trial attorney appeared before the court and advised it that he had received a letter from defendant making further inquiry as to the possibility of an appeal.[2] Rather than attempting to determine defendant's intention

---

[1] MCLA § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

[2] The import of this oral motion as discussed *infra* warrants reproduction of the entire proceedings:

"*Mr. Freel (trial attorney for defendant):* Let the record show that I, Michael N. Freel, court-appointed attorney for the defendant Louis F. McKinley in the matter heretofore tried in the Circuit Court for the County of Iosco on August 23 and 24, 1966, have received from the said defendant a letter making further inquiry as to the possibility of an appeal.

respecting post-conviction proceedings, the trial
court merely ordered a copy of the trial transcript
to be transmitted to defendant with a reminder that
defendant must make a decision to appeal within
60 days of the date of sentencing.

Upon being informed by his trial counsel of the
court's order providing a transcript and upon being
advised of the 60-day time limitation,[3] defendant
proceeded to make subsequent requests and inquiries
needed "to compleate [sic] my appeal." (Letter

---

"In that regard I would move the Court to send the defendant
Louis F. McKinley a copy of the transcript and permit me to
apprise the defendant of his right to appeal within 60 days from
the date of his sentence.

"The Court: Do you have any objection, Mr. Ernst?

"Mr. Ernst (Prosecuting Attorney of Iosco County): I would
object to the furnishing of a transcript at this time, Your Honor,
on the ground that the defendant has not filed an intention to appeal.
Until such intention is filed within the statutory period, he is not
entitled to a transcript.

"The Court: I think there is some merit in your position, Mr.
Ernst, but we will order a transcript prepared and appoint Mr.
Freel attorney for the specific purpose at this time of just forward-
ing the transcript and reminding the defendant that he must make
a decision to appeal within 60 days of the date of sentence.

"As I understand it, Mr. Freel, he is not asking you to be
appointed his attorney for an appeal, is he?

"Mr. Freel: That is correct, Your Honor, he is not.

"The Court: If he would make such a request we would grant
it, but he is not making that request as I understand it. I note
in the order that he has not requested counsel, but we will order
a complete trial transcript. There is no reason to furnish him a
transcript of the preliminary examination."

3 "Dear Mr. McKinley:

"I am in receipt of your letter concerning the possibilities of an
appeal from your conviction in the above matter. You indicate
that you wish a transcript for the possibility of appeal after appeals
from the codefendants, Ona Lee Roberts and Jack McKinley, are
prosecuted. Please be advised that you have 60 days from the date
of sentencing to prosecute your appeal as a matter of right.

"I have this date moved the Iosco County Circuit Court for an
order to provide you with a transcript of the proceedings, that
is a transcript of the trial testimony and of the sentencing which
he granted you. You may expect this transcript after Miss Bessie
Brown, the court stenographer, has had a reasonable opportunity to
prepare this material.

"Also find enclosed forms for initiating an appeal.

"Very truly yours,
"Michael N. Freel"

from defendant to court stenographer dated November 1, 1966.) The trial judge, however, informed defendant by letter dated December 13, 1966, that:

"We have not received a request for an attorney from you to prosecute an appeal, although it does appear that we had a request for a transcript, submitted through Mr. Michael N. Freel, your trial court-appointed attorney. The record shows that on November 8 the transcript was mailed to you.

"As you should have been aware from the advice given at the time of sentence and the advice further given by Mr. Freel, your time for appeal expired on or about October 29, 1966.

"If you wish the assistance of counsel you should advise me promptly. At this time counsel would have to petition for leave to file a delayed appeal."

On or about November 3, 1967, defendant by letter requested the trial court to review his conviction. The trial court treated the letter as a motion for leave to file a delayed motion for new trial and—upon defendant's request at the hearing upon the motion and in a subsequently filed "petition for counsel only"—appointed counsel to represent defendant in presenting his motion. After a hearing held upon this motion the trial court denied the defendant's motion and likewise denied defendant further assistance of counsel in subsequent post-conviction proceedings.

Defendant *in propria persona* filed application for habeas corpus in the Court of Appeals alleging incompetence of trial counsel and denial of post-conviction remedies. The Court of Appeals, treating the application as a complaint for superintending control, denied the same for lack of meritorious grounds for the relief sought.

Delayed application for leave to appeal was granted by this Court (381 Mich 809) but limited to

the issue of whether defendant has the right to appointment of appellate counsel to prepare and file a delayed application for leave to appeal to the Court of Appeals.

Much reliance is placed by the People upon the case of *Jensen* v. *Menominee Circuit Judge* (1969), 382 Mich 535, decided by this Court in the interim between grant of leave to appeal and oral arguments in the instant case. However, *Jensen* is distinguishable in that it involved a conviction prior to 1963 and carried "no (constitutional) right of appeal" (*Jensen, supra,* at p 540), and that over six years had expired before Jensen attempted to secure any post-conviction relief. In the instant case defendant had a right to appeal[4] and indicated his interest or desire to do so by letter to his trial attorney at least within 60 days from date of sentencing.

The crucial question in the instant case, as distinguished from those issues discussed and decided in *Jensen, supra,* is whether defendant waived his right to appeal and his corollary right to appointment of appellate counsel.

It is the people's position that defendant was advised of his rights and was not denied an opportunity to appeal as of right with appointed counsel. It is implied by this argument that defendant's silence in the matter should be construed to be a waiver of his constitutional right to appeal and to appellate counsel.

We are bound, however, by the statement in *Swenson* v. *Bosler* (1967), 386 US 258 (87 S Ct 996, 18 L Ed 2d 33):

"We think the documents contained in this transcript demonstrate that respondent did indicate to the Missouri courts his desire for counsel on appeal.

---

[4] Mich Const 1963, art 1, § 20.

But even if such a request had not been made, we do not think its absence would amount to a waiver of respondent's rights.    It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.'  *Carnley* v. *Cochran* (1962), 369 US 506, 513 (82 S Ct 884, 889, 8 L Ed 2d 70, 76).    When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."    (P 260.)

Waiver, as that term has been repeatedly defined by this Court, is the intentional relinquishment or abandonment of a known right.    See *Welling* v. *Dave's Cut Rate Drugs, Inc.* (1961), 362 Mich 389; *Book Furniture Company* v. *Chance* (1958), 352 Mich 521; *Maxey* v. *Proctor* (1955), 343 Mich 453; *Kelly* v. *Allegan County Circuit Judge* (1969), 382 Mich 425. The Court indulges every reasonable presumption against waiver of constitutional rights.    (See *Johnson* v. *Zerbst* [1938], 304 US 458 [56 S Ct 1019, 82 L Ed 1461].)    Intelligent waiver, of course, is made to depend upon the considered choice of defendant, and a choice made by counsel but not participated in by defendant does not meet this constitutional standard.    (See *Fay* v. *Noia* [1963], 372 US 391 [83 S Ct 822, 9 L Ed 2d 837].    See, also, *People* v. *Phillips* [1970], 383 Mich 464.)    In final analysis, the determination of whether there has been an intelligent and knowing waiver must depend upon the facts and circumstances of each particular case.    See *Johnson* v. *Zerbst, supra,* at p 464.

A careful reading of the record in the instant case discloses that although defendant was technically advised of his various rights, he failed to compre-

hend either the substantive or procedural nature of the available post-conviction remedies.

Illustrative of defendant's ignorance and confusion as to the available post-conviction remedies is the proceeding held on the application for leave to file the delayed motion for new trial.[5] Only after the hearing had been well under way did it become apparent to the court that defendant, by his motion, was attempting to secure appointment of counsel:

*"The Court:* * * * On the other hand, you do have the burden of proof now. You are the moving party, and some way or other you have got to demonstrate your allegations for a motion for a new trial.

*"Defendant:* Yes, sir. That wasn't meant for a motion for new trial. That is what I was going to use when I get a lawyer. You see I want a lawyer.

*"The Court:* Oh, you are asking for a lawyer?

*"Defendant:* Yes. I thought that is what this was.

*"The Court:* You never asked me for a lawyer up to this minute, until you just said it now. You never once have asked for a lawyer.

*"Defendant:* I thought that is what this was, to ask for a lawyer. You see I don't understand court proceedings.

*"The Court:* Well, is this what you are asking for? You are asking for a lawyer?

*"Defendant:* Yes. That is what that was meant for there.

*"The Court:* Well, it doesn't say so. I will re-read it to see if I missed that. Mr. Ernst, do you see anything in here where he asked for a lawyer?

*"Mr. Ernst (Prosecuting Attorney of Iosco County):* No, Your Honor, I don't.

*"The Court:* I assumed you had got all that legal advice you wanted. From the number of cases you cite you must have had some pretty good jail-house counsel.

---

[5] February 5, 1968.

*"Defendant:* But I need a lawyer to represent me. I don't know anything about how to draw them up. I have the allegations there if I have somebody who knows how to present them.

*"The Court:* Well, of course it is way too late to ask for an attorney for an appeal. Even for a new trial, it is way too late. If you could give me some reason to justify your delay for such a long period of time, we might consider a delayed request, but so far all you have done here is cite a lot of cases. I thought you had such a good lawyer down there in the prison that you didn't want any of the local lawyers.

\* \* \*

*"The Court:* \* \* \* Well, as I understand it you have changed now and you are no longer asking for just a new trial. You want an attorney to pursue this petition for a new trial.

*"Defendant:* Yes.

*"The Court:* Or do you want an attorney in the event I grant a new trial? Which is it? or both?

*"Defendant:* I want an attorney both ways. I don't understand anything about these court proceedings.

*"Mr. Ernst:* It was my understanding, Your Honor, that Mr. McKinley's letter was being regarded as an application or petition for leave to file a delayed motion, rather than the motion itself.

*"The Court:* That's right.

"You call it a brief, Mr. McKinley. Do you have any reason at all for the delay?

*"Defendant:* Just that I am ignorant of the law and don't understand a thing about it. That is the only possible reason."

From a totality of the facts and circumstances presented by this record, it is abundantly clear that defendant, within the time permitted for appeal as of right, desired post-conviction relief and that appointed counsel was essential to a timely and proper securement of those rights.

We do not infer from the events occurring within the 60 days from date of conviction, as did the trial judge, that defendant was merely satisfying some idle curiosity as to an appeal. It should have been manifest to the trial judge that defendant desired some post-conviction relief and was attempting in his own ignorant way, by requesting a transcript, to secure some remedy for his conviction.

Neither can we construe the trial counsel's statements at the proceedings to secure the trial transcript as binding upon defendant or acceptable as a constitutionally satisfactory equivalent for defendant's "considered choice" to waive his right to appeal and right to counsel. The most liberal inference that can be drawn indicates only that defendant did not desire trial counsel to continue as his appellate attorney and not that defendant intended to waive his right to the appointment of counsel and proceed *in propria persona*. Not only the trial counsel's ambivalent statements but also the unusual request of defendant—as indicated by the prosecutor's objection—should have at least suggested to the trial judge that the appointment of an attorney was necessary to assist this indigent defendant in the desired post-conviction proceedings.

It was error for the trial judge to ignore defendant's manifested desire to appeal and rely exclusively upon trial counsel to fully inform defendant of all his constitutional rights.[6] It was incumbent upon the trial judge—once he realized or should have realized after conviction upon a trial, that the defendant desired to pursue post-conviction relief—to make certain that waiver of right of appeal and counsel to assist defendant is understandingly and know-

[6] The sum and substance of the trial counsel's advice to the incarcerated defendant, whose time to appeal as of right was rapidly expiring, is reproduced *supra*, fn 3.

ingly made.[7] Mr. Justice Black commented, upon the analogous situation, in *Von Moltke* v. *Gillies* (1948), 332 US 708 (68 S Ct 316, 92 L Ed 309):

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." (Pp 723, 724.)

See, also, *People* v. *Whitsitt* (1962), 366 Mich 609.

We conclude from the facts presented by the record in the instant case that defendant did not intelligently and knowingly waive his constitutional right to appeal and his right to have counsel appointed.

---

[7] The advice by the trial judge subsequent to the expiration of the period within which to appeal cannot be condoned as an adequate discharge of the court's initial responsibility to determine that there is an intelligent and competent waiver by the accused.

The cause is remanded to the trial court for appointment of counsel for proper post-conviction proceedings.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, ADAMS and T. G. KAVANAGH, JJ., concurred with T.M. KAVANAGH, J.

BLACK, J. (*concurring in remand*). The majority opinion of *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811) having been stretched and applied to *Swenson* v. *Bosler* (1967), 386 US 258 (87 S Ct 996, 18 L Ed 2d 33), I agree with Justice T. M. KAVANAGH that we are bound here to apply the "even if" *Swenson* abstraction, appearing at p 260.

Considering the impactive experience of seven years since *Douglas* was handed down, few experienced state court judges can or will gainsay Mr. Justice Clark's trenchant dissent (*Douglas* at p 359):

"With this new fetish for indigency the Court piles an intolerable burden on the State's judicial machinery. Indeed, if the Court is correct it may be that we should first clean up our own house. We have afforded indigent litigants much less protection than has California."*

Reflect upon this *McKinley* case just as an example. Only for appellate services rendered *thus far* in this Court, and saying nothing of the expenses incurred and paid by Iosco county for professional representation of Mr. McKinley during the jury trial

---

* Every bit as forceful, dissenting Justices Harlan and Stewart endorsed this (*Douglas* at p 361):

"[I] am constrained to dissent from the implicit extension of the equal protection approach here—to a case in which the state denies no one an appeal, but seeks only to keep within reasonable bounds the instances in which appellate counsel will be assigned to indigents."

which resulted in his 1966 conviction, the county has been billed recently by appointed counsel for fees and costs aggregating $3,687.22, $1,000 of which has been paid. With the ever-mounting encouragement of Fourteenth Amendment appeals that is prevalent now, this profligate drain upon county and state treasuries can be stopped only by a constitutional amendment barring civil and criminal appeals as of right; limiting them to such as are grantable upon application.

Such an amendment is both due and fair. It will provide for our state and its subdivisions no more than that same protection against frivolity and squander which insulates the United States Supreme Court. For unchallenged facts and statistics, see Mr. Justice Clark's dissent aforesaid, pp 358, 359, 360.

The above said, I concur in remand as proposed.