# Order

**Michigan Supreme Court**
**Lansing, Michigan**

January 10, 2020

159871

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

NICHOLAS COLE SINNETT,
      Defendant-Appellant.

_____/

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

SC: 159871
COA: 336775
Oakland CC: 2016-259413-FC

On order of the Court, the application for leave to appeal the May 9, 2019 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CAVANAGH, J. (*concurring*).

I concur in the Court's order denying leave to appeal in this case but write separately to identify a serious trial court error, which would warrant reversal of defendant's conviction were it not rendered harmless by the overwhelming evidence of defendant's guilt.

Defendant was tried before a jury for armed robbery, possession of a firearm during the commission of a felony, and unlawfully driving away a motor vehicle. After the prosecution rested, defense counsel informed the trial court that defendant had intended to testify but had been threatened in the jail by an individual who would likely be called as a rebuttal witness. According to defendant, a man named Derrick Johnson threatened him "don't be a rat" because defendant planned to implicate an associate of Johnson's. Defense counsel asked for time to confer with defendant about whether he still intended to testify. Following a brief off-the-record discussion, defense counsel made a record:

> [*Defense Counsel*]: Okay. And as we stand here today and you are here to make your final decision, do you wish to testify or do you wish to remain silent?
>
> *The Defendant*: It would be better for me to stay silent.
>
> [*Defense Counsel*]: Has anyone promised you or threatened you to get you to make this decision?
>
> *The Defendant*: Besides Derrick Johnson, no.

After that, the trial court also questioned defendant about the alleged threat. Defendant elected not to testify and was ultimately found guilty as charged. Defendant's convictions were affirmed on appeal; the Court of Appeals concluded that defendant waived his right to testify and there was no plain error affecting his substantial rights.

A defendant's right to testify is grounded in the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. *People v Bonilla-Machado*, 489 Mich 412, 419 (2011). The right to testify is "essential to due process of law in a fair adversary process." *Rock v Arkansas*, 483 US 44, 51 (1987) (quotation marks and citation omitted). In fact, a defendant's right to present his own version of events is fundamental, and sometimes "the most important witness for the defense" is the defendant himself. *Id*. at 52. A defense attorney may counsel a defendant against testifying as a matter of sound trial strategy; however, the ultimate decision to testify rests solely with the defendant. *Bonilla-Machado*, 489 Mich at 419. In Michigan, the trial court is not required to determine whether a defendant waives the right to testify, and if the defendant "decides not to testify . . . the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685 (1985) (quotation marks and citation omitted).

In the Court of Appeals, defendant argued that that trial court failed to take sufficient steps to protect his constitutional right to testify. I agree. The record shows that defendant *repeatedly* informed the trial court that he believed he had been threatened not to testify, but the trial court did nothing about it:

> *The Court*: All right. Mr. Sinnett, this is your decision as to whether you want to testify or not. You've talked to your attorney at length prior to this case starting, during this week, additionally this morning. Has anyone promised you or threatened you?
>
> *The Defendant*: I actually, ma'am, I had intended on taking the stand the whole time until this morning. I was—I had made my attorney aware that I had been threatened in the past. That my paperwork had been stolen and she knows of it and I only recently—
>
> *The Court*: What, what was the threat? What was the threat and where did it come from?
>
> *The Defendant*: The threat came from a black guy they call DJ that was in your holding tank . . . .
>
> \* \* \*
>
> *The Court*: What, what was the threat?
>
> *The Defendant*: The threat was don't be a rat. Don't be a rat. I

know Duane and I was like—

* * *

*The Court*: It is up to you to decide whether you want to testify or not. If you think it's in your best interest to testify and say whatever it is that you want to say in front of this jury then you do it. If, if you don't want to do it, you don't do it. It is your decision ultimately.

You've had plenty of time to speak with your attorney correct?

*The Defendant*: Yes ma'am.

*The Court*: Okay. And so you know you have an absolute [sic] not to testify.

*The Defendant*: I do.

*The Court*: And that I'm going to instruct the jury that they are to not take that into account whatsoever in their deliberations because you have a right not to testify, you understand that?

*The Defendant*: Yes ma'am.

*The Court*: Okay. You also have a right to testify if you want to. Okay. So when [defense counsel] is asking you whether anyone has promised you anything or threatened you you're indicating to me that you're deciding not to testify because of something you heard from another person that's in custody, correct?

*The Defendant*: That the prosecution plans to call against me as a rebuttal.

*The Court:* It doesn't matter—that doesn't matter. You're indicating the reason why you're not going to testify is because someone else that's in custody—

*The Defendant*: Yes.

*The Court*:—has accused or, or said to you don't be a rat.

* * *

*The Court*: Okay. All that aside, I don't know any of this and I don't know the truth to any of that. Okay. So all I'm hearing is that someone is accusing you of potentially if you testify that you might be a rat, okay.

Correct?

> *The Defendant*: Right.

> *The Court*: Okay.  There have been no threats other than that, other than those statements, correct?

> *The Defendant*: I mean that's the most serious one, yes.

The Court of Appeals suggested that this was sufficient to protect defendant's constitutional rights, outlining:

> Here, the trial court provided defendant the opportunity to consult with counsel before making a decision whether to testify.  The court then placed defendant under oath and questioned him about the alleged threat. Defendant agreed on the record that he had sufficient time to talk with counsel and that he was aware that he had an absolute right to testify. Indeed, on appeal defendant does not dispute that it was his decision not to testify.  [*People v Sinnett*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2019 (Docket No. 336775), p 6.]

I fail to see how *any* of this procedure safeguarded defendant's right to testify. Consulting with his attorney and putting the threat on the record did nothing to resolve the threat.  The trial court did not hold an evidentiary hearing to ascertain if defendant's allegations were credible, nor did it assure defendant that it would take appropriate curative action if he wished to exercise his constitutional rights.  The court could have, for example, ensured that defendant would not be placed in a holding cell with the man who allegedly imperiled his safety.  Although I recognize that in Michigan the trial court is under no duty to confirm on the record that a waiver of the right to testify is made intelligently and knowingly, *Simmons*, 140 Mich App at 684, I believe that when the trial court is informed that the free exercise of a constitutional right is at stake, its duty to protect that right is clearly implicated.[1]

---

[1] I find instructive the following holding from the Court of Appeals of Alaska:

> A trial judge faced with a defendant who, in the course of this process, voices fears of reprisal as a consequence of testifying—even vague and insubstantial fears—must do everything realistically possible to delve into the issue and elicit an informed, voluntary choice.  To this end, the judge should invite a full disclosure by the defendant and the defendant's counsel of any purported threat, offer to invoke the full weight of the court's protective powers against the source of any threat, and conduct a thorough inquiry in response to any information disclosed.  [*Knix v State*, 922 P2d 913, 919 (Alas App, 1996).]

Next, I am troubled by the Court of Appeals' conclusion that defendant waived his constitutional right to testify. A waiver is the "intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 762 n 7 (1999) (quotation marks and citation omitted). Furthermore, "[i]ntelligent waiver, of course, is made to depend upon the considered choice of defendant . . . ." *People v McKinley*, 383 Mich 529, 536 (1970). A waiver of a constitutional right based on intimidation or coercion is invalid as it is not a freely made choice. See *People v Akins*, 259 Mich App 545, 564 (2003). Taking defendant at his word—given that, as noted, the trial court failed to meaningfully delve into the nature and circumstances of the threats or ascertain whether the threats were credible—his decision not to testify does not appear to be one made upon considered choice. In my view, the choice to stay silent or to exercise a right and face potential physical harm[2] is no choice at all.

I also disagree with the Court of Appeals' conclusion that defendant failed to preserve this issue since he "did not argue in the trial court that he was denied his constitutional right to testify on his own behalf . . . ." *Sinnett*, unpub op at 5. The record clearly shows that both defense counsel and the trial court put defendant's "waiver" of his *constitutional* right to testify on the record. In fact, the trial court's questioning of defendant on this topic spans seven pages of the transcript. "The purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice." *People v Mayfield*, 221 Mich App 656, 660 (1997). Other than using the word "constitutional" when informing the trial court that he wished to testify but would not because he had allegedly been threatened, I am unsure what else defendant could have done to preserve this issue or why the Court of Appeals would require more. Defendant raised this issue, a record was created, and the trial court had an opportunity to alleviate the prejudice. Because this issue was preserved, the Court of Appeals erred by reviewing the claim for plain error instead of for harmless error.

All this aside, however, I join the Court's denial order because even under the appropriate harmless-error standard of review, see *People v Anderson (After Remand)*, 446 Mich 392, 405-406 (1994), I cannot conclude that defendant is entitled to relief. Defendant visited the victim's home the day before the robbery and earlier on the same day as the robbery. The victim was able to identify him as was an employee of the victim's husband. On the afternoon of the robbery, defendant visited the home acting suspiciously; for example, he offered to buy the home for a price that exceeded its appraised value, asked to come inside and look around, and asked the victim why she was

---

[2] At defendant's posttrial *Ginther* hearing, he explained that in his opinion being labeled "a rat" would be a "death sentence" in the county jail. See *People v Ginther*, 390 Mich 436 (1973).

not wearing her wedding ring. While speaking with defendant, the victim noted that defendant was wearing shoes that did not match the rest of his professional attire. During the robbery, the victim observed that the suspect had a similar physical build to defendant and that he was wearing the same shoes that defendant had worn when he visited her home earlier that day. In addition, the victim's stolen Jeep was discovered in a parking lot about one-half mile from her home. Surveillance video footage from that parking lot showed that just prior to the robbery a black Ford F-150 backed into that parking lot and a man exited the truck. Approximately 15 minutes later, the victim's Jeep was shown pulling up next to the F-150. The driver exited the Jeep and got into the F-150 and drove away. Defendant later admitted to police that he drove a black Ford F-150. Furthermore, defendant's phone number and that of his girlfriend, whose phone had an area code from Arizona, were linked to phone calls associated with the crime. Finally, defendant provided police with information about a man named Duane Butler. When a search was conducted at Butler's residence, the victim's credit cards were found. Overall, the prosecution presented substantial and overwhelming evidence that defendant was the perpetrator of the charged crimes, and I cannot conceive what defendant could have testified to that would have altered the verdict.[3]

---

[3] In addition, it is clear from a review of the *Ginther* hearing transcript that the trial court did not find defendant credible, and this strengthens my conclusion that any testimony provided to the jury would not have been likely to help defendant's cause.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 10, 2020



Clerk

a0107