PEOPLE v LEONARD

Docket No. 61928. Submitted March 2, 1983, at Lansing.—Decided May 17, 1983. Leave to appeal applied for.

Matthew Leonard was convicted of three counts of criminal sexual conduct in the first degree following a jury trial in Oakland Circuit Court, Robert L. Templin, J. Prior to trial, defendant moved to suppress the testimony of a Michigan State Police polygraph operator concerning the answers given by defendant to questions which had been asked after the polygraph examination had ended. While defendant, on advice of counsel, waived his *Miranda* rights prior to the polygraph examination and specifically waived the right to counsel at the polygraph examination, neither defendant nor defense counsel was aware at the time of the waiver that there would be any post-examination interrogation. The trial court ruled that the testimony of the officer relative to the post-examintion interrogation was admissible, defendant's answers being separate and distinct from the polygraph examination and having been made after defendant's waiving of his constitutional rights. The officer testified at trial as to defendant's answers during the post-examination interrogation. Defendant appeals. *Held:*

Since defendant and defense counsel were not aware that there would be any post-examintion interrogation, there could be no knowingly and understandingly made waiver of the right to have counsel present at the post-examination interrogation. The waiver of the right to counsel that defendant made extended only to the polygraph examination itself and terminated upon the termination of the polygraph examination.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21A Am Jur 2d, Criminal Law §§ 759, 761, 763, 989, 990.

Accused's right to counsel under the Federal constitution—Supreme Court Cases. 18 L Ed 2d 1420.

[2] 21A Am Jur 2d, Criminal Law § 938.

29 Am Jur 2d, Evidence § 831.

Physiological or psychological truth and deception tests. 23 ALR2d 1306.

1. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER.

    The Sixth Amendment right to counsel arises whenever an accused has been indicted or adversary criminal proceedings have otherwise begun and this right is violated when admissions are subsequently elicited from the accused in the absence of counsel and in the absence of a valid waiver.

2. CRIMINAL LAW — RIGHT TO COUNSEL — POLYGRAPH EXAMINATION — WAIVER — EVIDENCE.

    A criminal defendant against whom criminal proceedings have begun has a right to have counsel present during a polygraph examination and any questioning which occurs after the examination has ended; a waiver by defendant of his right to have counsel present at a polygraph examination is not effective as to any questioning done after the examination where defendant and his counsel were not informed that there would be interrogation following the examination; under such circumstances any responses made to the post-examination interrogation would be inadmissible at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*LaBarge, Dinning, Lyons & Greve, P.C.* (by *Robert G. Lyons),* for defendant.

Before: R. B. BURNS, P.J., and BRONSON and R. E. ROBINSON,* JJ.

R. B. BURNS, P.J. Defendant was convicted by a jury of three counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). He appeals and we reverse.

Prior to trial, defendant moved to suppress the testimony of John Wojnaroski, a Michigan State Police polygraph operator, concerning certain admissions made by defendant following his polygraph examination. At the hearing on the suppres-

* Circuit judge, sitting on the Court of Appeals by assignment.

sion motion, Wojnaroski testified that he advised defendant of his *Miranda*[1] rights prior to the polygraph examination. The admissions in question were made after the defendant had been disconnected from the polygraph machine and after defendant had been told that he had not answered the questions truthfully. The trial court ruled that the admissions were separate and distinct from the polygraph examination and that since defendant had been given his *Miranda* rights prior to the examination the statements were admissible.

Wojnaroski, the polygraph operator, testified over objection that on December 10, 1980, he conducted an "interview" of the defendant. The jury was not informed that the interview was, for the most part, a polygraph examination of defendant. Wojnaroski stated that he began the interview at approximately 1:11 p.m. Before conducting the interview, he advised the defendant of his *Miranda* rights and defendant indicated that he understood and waived these rights. The interview ended at approximately 3:30 p.m. At the close of the interview (after the polygraph examination had ended and after the defendant had been disconnected from the polygraph machine) Wojnaroski asked defendant several questions. Wojnaroski's testimony in regard to these questions and the defendant's answers to them was as follows:

"Okay. At the conclusion of my meeting with Mr. Leonard on December 10th, 1980, I had asked Mr. Leonard a question as to if he had at least advised his attorney as to what the whole truth of this investigation was. He indicated in a gesture of no by looking down and shaking his head in that manner (indicating).

"After that I asked Matthew Leonard if he was sorry

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

for what he did to the victim, and that victim would have been in this situation Mary O'Connor. Again, he looked down, and at this time nodded in the affirmative, yes, more or less looking down at his legs and making a couple of nods of his head.

"I then asked him if he knew what caused him to do this to the victim; that is, again, Mary O'Connor; and his answer at that time was a verbal no."

On cross-examination, Wojnaroski admitted that throughout the "interview" defendant denied sexually assaulting Ms. O'Connor and it was only at the end of the "interview" that defendant gave incriminating responses to Wojnaroski's questions.

Defendant was arrested on July 1, 1980, and subsequently was released on bond. The polygraph examination was held on December 10, 1980. Consequently, the polygraph examination in question occurred after criminal proceedings had commenced against defendant. It is well settled that a defendant's Sixth Amendment right to counsel arises whenever an accused has been indicted or adversary criminal proceedings have otherwise begun and that, in the absence of a valid waiver, this right is violated when admissions are subsequently elicited from the accused in the absence of counsel. *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *United States v Henry,* 447 US 264; 100 S Ct 2183; 65 L Ed 2d 115 (1980); *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982). Accordingly, it is clear that defendant had a right to have counsel present during the polygraph examination and the questioning which occurred after the examination had ended. *People v Pottruff,* 116 Mich App 367; 323 NW2d 402 (1982). It was stipulated that the results of the polygraph examination and the polygraph examiner's opinion as to the defendant's veracity

would not be used against defendant at trial. With this understanding, defendant agreed to take the polygraph examination. He was given his *Miranda* rights prior to the examination and he clearly waived his right to counsel for questions during the examination. However, neither the defendant nor his counsel was informed that there would be an interrogation after the polygraph examination and the waiver was not extended to the interrogation conducted after the examination had ended. Accordingly, the absence of counsel during this time rendered the defendant's inculpatory responses inadmissible. *People v Pottruff, supra.*

Reversed and remanded for a new trial.