PEOPLE v LEONARD

Docket No. 71870. Argued June 7, 1984 (Calendar No. 9).—Decided
December 28, 1984. Released February 1, 1985.

Matthew Leonard was convicted by a jury in the Oakland Circuit
Court, Robert L. Templin, J., of three counts of first-degree
criminal sexual conduct. Prior to trial, at the suggestion of the
prosecutor, the defendant submitted to a polygraph examina-
tion under a stipulation and court order that the results of the
examination would not be admissible at trial. Inculpatory
statements by the defendant made in the absence of counsel
after being detached from the polygraph apparatus were admit-
ted over the defendant's objection. The Court of Appeals, R. B.
Burns, P.J., and Bronson and Robinson, JJ., reversed on the
ground that admission of the results of the post-polygraph-
examination interrogation conducted in the absence of counsel
and a valid waiver of the right to counsel by the defendant
denied the defendant's right to counsel (Docket No. 61928). The
people appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

The defendant's statements should not have been admitted
because the defendant did not knowingly waive his right to
remain silent.

Chief Justice Williams, concurring, wrote separately, agree-
ing that inculpatory statements by the defendant made follow-
ing detachment from the polygraph machine should be ex-
cluded because he did not knowingly waive his right to counsel
in view of the stipulation executed by the prosecution and
defense counsel. The prosecution did not meet its burden under

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law § 941.
    29 Am Jur 2d, Evidence § 645.5.
[1-4] 21A Am Jur 2d, Criminal Law §§ 633, 634, 938.
    29 Am Jur 2d, Evidence §§ 555 *et seq.,* 831.5.
    Admissibility of lie detector test taken upon stipulation that the
    result will be admissible in evidence. 53 ALR3d 1005.
    Necessity of informing suspect of rights under privilege against self-
    incrimination, prior to police interrogation. 10 ALR3d 1054.
[2-4] 21A Am Jur 2d, Criminal Law §§ 972-975, 988 *et seq.*

the Michigan Constitution of proving that the defendant knowingly, intelligently, and intentionally relinquished his right to counsel.

1. A defendant may waive the right to assistance of counsel. Where the state seeks to introduce evidence obtained in the absence of counsel, it is incumbent upon the state to prove waiver by showing that the defendant intentionally and intelligently relinquished the right which he knew to be a right. The defendant must have been apprised of the nature of the protection that an attorney could provide at the stage of the proceeding at issue. Waiver is to be tested by a strict standard, applicable to a trial or to a crucial stage of pretrial procedure, and courts must indulge in every reasonable presumption against waiver.

2. In this case, no evidence was introduced by the prosecution that the defendant made an intentional and intelligent relinquishment of his right to counsel or that he believed that under the stipulation and court order whatever he said while at the facility where the polygraph examination was given would not be introduced during trial. Without a showing that the defendant correctly understood the implication of the stipulation and court order, it is impossible to conclude that the defendant intelligently relinquished his right to counsel. Without the necessary proofs, it must be presumed that there was no valid waiver, and thus evidence of the defendant's inculpatory statements should not have been admitted. In addition, the prosecution made no showing that the defendant had an understanding of his right to counsel which is required for a valid waiver.

Affirmed.

125 Mich App 756; 337 NW2d 291 (1983) affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW — RIGHT TO REMAIN SILENT — WAIVER.

Inculpatory statements made by a defendant following a polygraph examination which had been submitted to under a stipulation by the prosecutor and defense counsel and a court order that neither the results of the examination nor opinions drawn therefrom would be admissible in evidence should not have been admitted in evidence because, in view of the stipulation, the defendant did not knowingly waive his right to remain silent.

SEPARATE OPINION BY WILLIAMS, C.J.

2. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER.

A defendant may waive the right to assistance of counsel; where

*the state seeks to introduce evidence obtained in the absence of
counsel, it is incumbent upon the state to prove waiver by
showing that the defendant intentionally and intelligently
relinquished the right which he knew to be a right; however,
the defendant must have been apprised of the nature of the
protection that an attorney could provide at the stage of the
proceeding at issue; waiver is to be tested by a strict standard,
applicable to a trial or to a crucial stage of pretrial procedure
and, courts must indulge in every reasonable presumption
against waiver (US Const, Am VI; Const 1963, art 1, § 20).*

3. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER.

*Inculpatory statements by a defendant made following a volun-
tary polygraph examination in the absence of counsel should
have been excluded where the prosecution did not meet its
burden of proving that the defendant knowingly, intelligently,
and intentionally relinquished his right to counsel (US Const,
Am VI; Const 1963, art 1, § 20).*

4. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER.

*The reading by police to a defendant of his rights under Miranda
v Arizona, 384 US 436 (1966), prior to administering a poly-
graph examination pursuant to a stipulation and court order
that the results would not be used during trial was not suffi-
cient to automatically satisfy the requirement that the defen-
dant must know that he had a right to counsel and that he
intentionally and intelligently waived the right (US Const, Am
VI; Const 1963, art 1, § 20).*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief
Appellate Counsel, and *Graham K. Crabtree,* As-
sistant Prosecuting Attorney, for the people.

*LaBarge, Dinning, Lyons & Greve, P.C.* (by *Rob-
ert G. Lyons),* for the defendant.

PER CURIAM. The defendant was convicted of
three counts of criminal sexual conduct in the first
degree, MCL 750.520b; MSA 28.788(2). The Court
of Appeals reversed those convictions because it
found that the defendant, who had waived his
right to have his counsel present at a polygraph

examination, had not knowingly and understand-
ingly waived that right as to post-examination
interrogation. The Court ruled that since counsel
was not present during the questioning which took
place after the polygraph examination, defendant's
Sixth Amendment right to counsel had been vio-
lated. Accordingly, the Court concluded that incul-
patory statements made by the defendant during
this questioning should not have been admitted at
his trial.

We agree with the Court of Appeals conclusion
that these statements should not have been admit-
ted. However, we premise our agreement on the
ground that the defendant did not knowingly
waive his right to remain silent in view of the
stipulation executed by the prosecution and the
defense whereby the results of the polygraph ex-
amination and opinions drawn therefrom would
· not be admissible in evidence.

The judgment of the Court of Appeals is af-
firmed.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN,
BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred.

WILLIAMS, C.J. *(writing separately).* Although
concurring with the per curiam decision, I write
specifically, having arrived at that decision by the
following analysis. A statement of the facts are
included herein since the per curiam opinion ex-
cluded such statement.

I. INTRODUCTION

Whether under the Michigan Constitution there
was a valid waiver of defendant's right to the
assistance of counsel for his defense is the major

issue in this case.[1] That issue is one of first impression in this Court and has not been ruled on by the United States Supreme Court.[2]

The waiver issue arises from the defendant submitting to a polygraph examination after it was suggested by the prosecution and after defendant's lawyer secured a stipulation and a court order which he argues suppresses all evidence from questions while in the polygraph examination room, and which the prosecution argues does not suppress testimony after defendant was detached from the polygraph machine. *Miranda*[3] rights were read three times prior to the beginning of the polygraph examination, and defendant responded "yeah" to his understanding of those rights and "yeap" to whether he waived them. This is the principal evidence of the alleged waiver. At no time during the interview were defendant's rights under the stipulation and the court order, and their relation to his *Miranda* rights, or the peculiar importance of assistance of counsel in an interrogation situation explained to him. Before trial, defendant moved on the basis of the stipulation and court order to suppress his responses to the polygraph examiner to questions after he was detached from the polygraph machine. The trial

---

[1] Const 1963, art 1, § 20.

[2] The Michigan Supreme Court has not spoken on or been confronted with such a right to counsel issue. We have spoken on defendant's art 1, § 17 self-incrimination right to counsel. *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), *cert den* 456 US 995; 102 S Ct 2280; 73 L Ed 2d 1292 (1982).

The United States Supreme Court has not spoken on this issue to date either. While other cases concerning the admissibility of evidence obtained from post-polygraph interviews have been considered, the rulings in those cases have relied exclusively on the Fifth Amendment of the United States Constitution. See *Wyrick v Fields,* 459 US 42; 103 S Ct 394; 74 L Ed 2d 214 (1982), and *Oregon v Bradshaw,* 462 US 1039; 103 S Ct 2830; 77 L Ed 2d 405 (1983).

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

court denied the motion, but the Court of Appeals reversed, finding a denial of defendant's Sixth Amendment right to counsel.

Thus, I hold that the prosecution did not meet its burden under the Michigan Constitution of proving that the defendant knowingly, intelligently, and intentionally relinquished his right to counsel for his defense.

## II. Facts

The events which gave rise to the charged offenses occurred on the evening of May 17, 1980. At trial, complainant, Mary O'Connor, testified that at 9:30 p.m. she left the fabric store where she was employed in the Oakland Mall. She walked with two other women toward her car in the parking lot. Since her car was parked farther away than the other women's she continued alone to her car.

Upon reaching her car, Ms. O'Connor opened her door, got in on the driver's side, and closed her umbrella outside the car with the door still open. She testified that defendant suddenly appeared, showed her a three- to four-inch kitchen paring knife, ordered her to move over to the passenger side, and took control of the car. After driving around for a short time, defendant parked the car behind an industrial building in Troy, and forced her to submit to intercourse. Then defendant drove to another lot in Troy where she was again forced to submit to sexual intercourse. Defendant then left the car. Ms. O'Connor drove to her parents' home and subsequently was taken to Crittendon Hospital where she was examined by a doctor and interviewed by a Troy Police Department officer.

Detective Teasdale testified that on July 1, 1980, Ms. O'Connor identified the defendant from a

photo line-up. The detective testified that he arrested the defendant on July 2, 1980 at his place of employment. The arrest was made as defendant was entering his car. A knife and rope were removed from the car of Matthew Leonard during the impoundment inventory procedure.

A preliminary examination was held on July 15, 1980 in the 52-4 District Court. Defendant was bound over to the Oakland Circuit Court as charged.

The defendant was arraigned in the Oakland Circuit Court on August 1, 1980. A notice of alibi defense was subsequently filed by defendant's counsel on August 15, 1980.

On December 10, 1980, at the suggestion of the prosecution, defendant agreed to take a polygraph examination to be administered at the Michigan State Police Northville Crime Laboratory. Prior to the administration of that examination defense counsel drafted a stipulation which read:

"Stipulation for Inadmissibility of Polygraph Exam and Results

"It is hereby stipulated and agreed, by and between the parties hereto, through their respective attorneys that neither the submission of Matthew Leonard to the polygraph examination, the results of the polygraph examination, nor anyone's opinion as to the results of the polygraph examination shall be admissible in a trial of the above referenced case number [No. 80-45346-FY] or any purpose whatsoever, by either party."

The prosecution agreed to the stipulation, and both the stipulation and an order signed by the trial judge were entered.[4] Defense counsel accompanied defendant to the examination site and

_____

[4] See Order of Inadmissibility of Polygraph Exam and Results entered with Oakland Circuit Judge Robert Templin, December 10, 1980.

reassured him that the results of the polygraph examination could not be used against him in court because they were excluded by the court's order. Defense counsel requested to view the administration of the polygraph examination and was denied the opportunity by the police agents in charge. Defense counsel waited for defendant outside the examination room.

On September 10, 1981, defense counsel brought a motion to suppress the confession made by defendant after he had been detached from the polygraph machine on December 10, 1980. The trial court denied that motion stating that the statements made after defendant was detached from the machine were not covered by the stipulation and order, but were separate and distinct from the polygraph examination. Further, the trial court found that there were ample *(Miranda)* warnings given prior to the polygraph examination, and that the questions in issue were asked in a time span short enough to be encompassed by the original warnings. Testimony of the polygraph examiner was allowed at trial over defense counsel's objections.

At trial Mary O'Connor identified Matthew Leonard as the perpetrator of her abduction and rape. She testified that the rope taken from defendant's car upon his arrest was "just like the rope" used in her abduction; however, she stated that the knife known as People's Exhibit No. 2 was definitely not the knife which defendant showed her.

John Wojnaroski, a Michigan State Police trooper, testified that he conducted an interview with defendant on December 10, 1980. He testified that he interviewed the defendant for approximately two and one-half hours and asked him 125

to 150 questions.[5] At the conclusion of this interview, he asked the defendant three additional questions: 1) if he had at least advised his attorney as to what the whole truth of the investigation was; 2) if he was sorry for what he did to the victim and that the victim would have been in this situation; and 3) if he knew what caused him to do this to the victim. To the first question, defendant responded by looking down and shaking his head. To the second question, defendant again looked down and nodded, yes, more or less looking down at his legs and making a couple nods of his head. To the last question, defendant verbalized, "No."

After hearing the arguments, the jurors deliberated and returned a verdict of guilty on three counts of criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2) and not guilty on the count of kidnapping, MCL 750.349; MSA 28.581. On November 6, 1981, Matthew Leonard was sentenced to life imprisonment on Count I, 25 to 100 years on Count II, and 25 to 100 years on Count III.

On appeal, one of the issues raised was whether the trial court erred by allowing Trooper Wojnaroski to testify as to the admissions made by the defendant. On May 17, 1983, the Court of Appeals reversed the trial court's ruling on the issue of admitting into evidence such confession, and remanded the case for new trial. *People v Leonard,* 125 Mich App 756; 337 NW2d 291 (1983).

The people filed an application for leave to appeal the decision of the Court of Appeals on

---

[5] Trooper Wojnaroski, in accordance with the stipulation, did not reveal that this questioning occurred in the course of defendant's polygraph exam or identify himself as a polygraph examiner.

At the pretrial motion hearing, Trooper Wojnaroski testified that after defendant was disconnected from the polygraph machine, he said, "I recall telling him the test was over and that he wasn't being truthful" and then asking questions 1-3 above.

June 6, 1983, raising only the issue decided by the Court of Appeals. On June 27, 1983, the defendant filed a response to the application for leave to appeal and a motion to add the additional three issues. On December 29, 1983, this Court issued its order granting the people's application and indicated that the defendant's additional issues were also granted.[6]

### III. IMPORTANCE OF RIGHT TO COUNSEL

The first and principal issue of this case is whether the defendant validly waived his right to counsel.[7] That issue is a matter of first impression in this Court.

As a consequence, before analyzing what test should be used to determine waiver, it is useful to review the significance of the right to counsel. The American constitution-makers spent many long months to put together the world's most nearly perfect form of government. However, before approving that document, the several American states, with almost one accord, felt some essential things had to be added. Justice Black of the United States Supreme Court takes up the matter in *Johnson v Zerbst,* 304 US 458, 462-463; 58 S Ct 1019; 82 L Ed 1461 (1938):

"The Sixth Amendment guarantees that 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as

---

[6] *People v Leonard,* 418 Mich 898 (1983).

[7] Since we hold there was no valid waiver, it is unnecessary to consider whether the evidence suppression order and stipulation cover all that transpired in the polygraph examination room or only that which occurred when defendant was "hooked up" to the machine.

originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under the Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious."

The "right to counsel for his defence" in the Sixth Amendment[8] was adopted in those same words as part of the Michigan Constitution and appear as art 1, § 20 of the 1963 Constitution.[9]

All constitutional rights are important, but it stands to reason that the right to counsel is of particular importance. For without this right the practical enjoyment of the other rights is often not realized. Especially after the defendant has been

[8] US Const, Am VI provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

[9] Const 1963, art 1, § 20 provides:

"In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

arraigned, as here, it is important for a defendant to have an attorney standing with him to protect the enjoyment of his rights. As the United States Supreme Court said in *Kirby v Illinois,* 406 US 682, 689; 92 S Ct 1877; 32 L Ed 2d 411 (1972):

"It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

The United States Second Circuit Court of Appeals further describes this situation as follows:

"Thus, after prosecution has begun, the right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved; the Sixth Amendment guarantees the accused 'that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' " *United States v Mohabir,* 624 F2d 1140, 1149 (CA 2, 1980).

This brief survey indicates beyond peradventure that the federal courts have regarded the right to counsel to be of paramount importance. There do not appear to be any Michigan cases articulating this philosophy, but two cases[10] have quoted with approval the following language from *Von Molte v Gillies,* 332 US 708, 723-724; 68 S Ct 316; 92 L Ed 309 (1948):

"We have said: 'The constitutional right of an accused

---

[10] *People v McKinley,* 383 Mich 529, 540; 176 NW2d 406 (1970), and *People v Whitsitt,* 366 Mich 609, 614; 115 NW2d 306 (1962). But see also *People v Esters,* 417 Mich 34, 65; 331 NW2d 211 (1982) (WILLIAMS, J., *dissenting),* and *People v Green,* 405 Mich 273, 304; 274 NW2d 448 (1979) (LEVIN, J., *dissenting).*

to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' *(Johnson v Zerbst,* 304 US 458, 465 [58 S Ct 1019; 82 L Ed 1461; 146 ALR 357 (1938)]; *Adams v United States ex rel McCann,* 317 US 269, 270 [63 S Ct 236; 87 L Ed 268; 143 ALR 435 (1942)].) To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel *(Johnson v Zerbst, supra,* 464; *Glasser v United States,* 315 US 60, 70 [62 S Ct 457; 86 L Ed 680 (1942)]), a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered."

## IV. TEST FOR WAIVER OF RIGHT TO COUNSEL

The leading United States Supreme Court opinion in defining the test for waiver of the right to counsel is *Brewer v Williams,* 430 US 387, 404; 97 S Ct 1232; 51 L Ed 2d 424 (1977). *Brewer* states the basic rule in this way:

"[I]t was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v Zerbst,* 304 US 464 . . . .

[C]ourts indulge in every reasonable presumption against waiver, *e.g., Brookhart v Janis* [384 US 1, 4; 86 S Ct 1245; 16 L Ed 2d 314 (1966)]; *Glasser v United States,* 315 US 60, 70. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings. *Schneckloth v Bustamonte,* 412 US 218, 238-240 [93 S Ct 2041; 36 L Ed 2d 854 (1973)]; *United States v Wade,* 388 US [218, 237; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)]."

The language of the *Brewer* test, as indicated, came from *Johnson v Zerbst.* The latter case explains the test in a way useful to the resolution of this case. *Zerbst* states:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an *intelligent* waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." (Emphasis added.) 304 US 464.

In other words, the "abandonment or relinquishment" must be done with "an *intelligent*" waiver of the right to counsel. That is, the right to counsel must be a "known" right and that right must be both "intelligently" and "intentionally" waived insofar as those two terms contain different ideas. That the *Brewer/Zerbst* rule contemplates that the relinquishment be both intentional and *intelligent* is illustrated by the following quotation from Justice Marshall's discussion of waiver of a Sixth Amendment right in his dissenting opinion in *Wyrick v Fields,* 459 US 42, 54; 103 S Ct 394; 74 L Ed 2d 214 (1982). Incidentally, the majority in *Wyrick* did not consider the Sixth Amendment and so did not state a different Sixth Amendment relinquishment test. Justice Marshall stated:

"The State must show that the defendant *intelligently* and *knowingly* relinquished his right not to be questioned in the absence of counsel. The State can establish a waiver only by proving ' "an intentional relinquishment or abandonment" ' of the right to have counsel present. *Brewer v Williams, supra,* 404, quoting *Johnson v Zerbst,* 304 US 458, 464 (1938)." (Emphasis added.)

Perhaps the statement that best illustrates what a waiver involves appears in *Adams v United States ex rel McCann,* 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 (1942), as follows:

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. *An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court.* But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson v Zerbst,* 304 · US 458, 468-469." (Emphasis added.)

As the *Brewer/Zerbst* rule indicates, there are two factors in a waiver: first, the *intelligent* and *intentional* relinquishment; second, of a *known* right. The emphasized language in the above quotation from *Adams* shows what a defendant should know in connection with his right to counsel where he is involved in a trial in order to make his choice with his eyes open.

The present case is not a trial case, it is a

pretrial case. Here the importance of a lawyer is not to marshal and present evidence in the best way, it is to counsel defendant how to conduct himself, and, in an interrogation, to help him to say what he should say to prevent him from saying what he should not say. The latter is particularly true where defendant is to be questioned by a skilled professional interrogator.

Consequently, if a defendant is to waive his right to counsel with his eyes open, it must appear on the record that he has been informed of the importance of having counsel with him in his particular circumstances and the danger he faces without counsel. To make this informing of the defendant equivalent to a *Miranda* warning, the potential interrogator must explain to the defendant the importance of having counsel consistent with our reasoning above and then ask the defendant if he understands. Only then can the potential interrogator ask the defendant whether he waives his right.

Before announcing a basic test for determining a valid waiver of an article 1, § 20 right to counsel, we recognize that the rule we set forth may be subject to later refinements that we are not now called upon to consider because the facts of this case permit us to make our conclusion without reaching those refinements. For example, we recognize that *Lego v Twomey,* 404 US 477, 489; 92 S Ct 619; 30 L Ed 2d 618 (1972), held that "the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. Of course, the States are free, pursuant to their own law, to adopt a higher standard." In our case there was an almost complete failure of proof so it is unnecessary at this time to explicate a rule relating to the weight of evidence, particularly in absence of argument or briefing on the subject.

While there was argument and briefing as to whether a Michigan rule for waiver should contain a "higher standard" requirement such as is in effect in the federal Second Circuit Court of Appeals[11] and adopted in some states[12] and reviewed by some learned commentators,[13] the facts of this case preclude the necessity of engaging in that exercise at this time because the prosecution's failure to consider the suppression document or in any way describe the usefulness of counsel in this situation permits the matter to be decided on the most basic consideration.

From our analysis then, we arrive at our rule for waiver where the right to counsel has been invoked and counsel has been consulted:

---

[11] A line of cases developed primarily out of the Second Circuit has provided a number of stringent standards for waiver of the Sixth Amendment right to counsel. Note dissenting opinion of Friendly, J., in *United States v Massimo,* 432 F2d 324, 327 (CA 2, 1970), *cert den* 400 US 1022 (1971), which expressed doubt as to whether federal courts should ever recognize waiver of the Sixth Amendment right to counsel. See, also, *United States v Mohabir,* 624 F2d 1140, 1151-1152 (CA 2, 1980) (which identifies three methods of meeting the stricter standard: 1) "treat the statements as admissible unless they have been preceded by further warnings and advice by the prosecutor . . . ," 2) "require such warnings and advice to be given by a judicial officer rather than by the prosecutor," and 3) "outlawing all statements resulting from post-arraignment or indictment interrogation . . . in the absence of counsel"; *Carvey v LeFevre,* 611 F2d 19 (CA 2, 1979); *United States v Satterfield,* 558 F2d 655 (CA 2, 1976).

[12] See *People v Hobson,* 39 NY2d 479; 384 NYS2d 419; 348 NE2d 894 (1976); *Pierce v State,* 235 Ga 237; 219 SE2d 158 (1975); *Lamb v Commonwealth,* 217 Va 307; 227 SE2d 737 (1976).

[13] See Kamisar, *Brewer v Williams, Massiah and Miranda: What is "interrogation"? When does it matter?,* 67 Georgetown L J 1, 99 (1978) for additional methods of meeting a higher standard 1) prohibition of post-indictment questioning unless defense counsel present, 2) further explanation of the nature and importance of the constitutional right at stake given by a judicial officer and under judicial supervision, 3) waiver only permissible under judicial supervision, 4) all police conversations and "waiver transactions" with defendant electronically recorded for future judicial scrutiny. Also see Note, *Sixth Amendment right to counsel: standards for knowing and intelligent pretrial waivers.* 60 Boston U L R 738 (1980), and Note, *Proposed requirements for waiver of the Sixth Amendment right to counsel,* 82 Colum L R 363 (1982).

1. It is incumbent upon the state to prove waiver.

2. Waiver may be proved by showing:

a) an *intentional* and *intelligent* relinquishment,

b) of a *known* right.

The defendant may waive the right of assistance of counsel if he knows what he is doing and his choice is made with his eyes open.

3. Defendant must be apprised of the nature of the protection which an attorney can provide at this stage of the proceeding.

4. A waiver is tested by a strict standard.

5. Courts will indulge in every reasonable presumption against waiver.

6. The strict standard applies at trial or at a crucial stage of pretrial procedure.

## V. APPLICATION OF WAIVER TEST TO FACTS OF THIS CASE

Turning to the facts of this case, we note that defendant had been bound over to the circuit court and arraigned approximately four months before the polygraph examination. Defendant had retained counsel and relied upon advice of counsel as to the stipulation, and counsel accompanied defendant to the polygraph site. As a consequence the rule requiring the initiation of adversary judicial proceedings prior to the attachment of the right to counsel was satisfied. *Brewer v Williams, supra; Massiah v United States,* 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964).

Plaintiff claims that the record shows he satisfied our test by showing that defendant made a "knowing and intelligent relinquishment or abandonment of his rights."

Plaintiff, however, introduced no evidence that defendant made an intentional and intelligent relinquishment of his right to counsel for his defense beyond the "yeah" to the question of whether he understood his *Miranda* rights and the "yeap" to the question of whether he relinquished those rights. Plaintiff made no showing whatsoever as to whether defendant believed his rights under the stipulation and court order meant that whatever he said would be suppressed from introduction into evidence, as defendant claimed, or that defendant believed that only what he said while attached to the polygraph machine would be excluded from evidence, as plaintiff claimed.

The importance of the failure of plaintiff to show that defendant correctly understood the implication of his evidence suppression stipulation and court order is that, without a showing of such correct understanding, it is impossible to know whether defendant *intelligently* relinquished his right to counsel for his defense. Further, since relinquishment is dependent upon a knowing understanding of both the extent of that right and the protection which that right affords at this stage of the proceedings, on the showings made by plaintiff in this case, a failure to show that defendant understood the right itself necessarily requires failure of his knowledge of the extent of protection provided by the right.

In this case we do not know whether defendant assumed, correctly or incorrectly, that the evidence suppression stipulation and court order did not cover the questions and answers involving his confession, but nonetheless intentionally relinquished the right to have counsel at his side. Of course, if defendant knew these documents did not protect him, and he still intentionally relinquished his rights, then he would have made a valid

waiver and the plaintiff would have made his case, unless defendant's assumptions were incorrect, in which case the suppression order would override the waiver. But plaintiff failed to prove defendant's assumptions and, consequently, plaintiff did not prove that defendant made an intelligent relinquishment and a viable waiver.

Of course, if the fact of the matter were that defendant assumed that the stipulation and order suppressed everything he said while in the polygraph room, and that were not true, and he relinquished his rights on that assumption, it would not have been an intelligent relinquishment. Consequently, there would not have been a valid waiver.

In any event, whatever the facts might have been as to defendant's understanding of the effect of the stipulation and court order, correct or incorrect, since plaintiff made no showing whatsoever on the subject, plaintiff failed to make necessary proofs. Consequently there was no valid waiver, and the evidence was improperly admitted by the trial court.

But leaving aside the particular facts of the case just discussed, plaintiff made no showing that defendant understood his constitutional right to counsel under the Michigan Constitution aside from his article 1, § 17 rights. It has been held more than once, and we now hold under the instant facts, that the giving of a *Miranda* warning does not automatically satisfy a defendant's Sixth Amendment or article 1, § 20 rights.[14] We have discussed in connection with *Adams, supra,*

---

[14] See *United States v Henry,* 447 US 264, 270-274; 100 S Ct 2183; 65 L Ed 2d 115 (1980); *Brewer v Williams,* 430 US 387, 400-401; 97 S Ct 1232; 51 L Ed 2d 424 (1977); *Massiah v United States,* 377 US 201, 204-206; 84 S Ct 1199; 12 L Ed 2d 246 (1964); *United States v Mohabir,* 624 F2d 1140, 1146-1150 (CA 2, 1980); *United States v Brown,* 569 F2d 236, 240-241 (CA 5, 1978) *(en banc)* (Simpson, J., *dissenting).*

what a defendant must know about the potential advice and usefulness of counsel in both a trial and a pretrial interrogation in order to satisfy the test of *intelligent* relinquishment of a *known* right. What a defendant must know is further illustrated in the rule set down in *Von Molte, supra.*

Whether defendant had any knowledge of what his right to counsel was in the instant interrogation and therefore was in a position to make, as plaintiff averred, "a knowing and intelligent relinquishment or abandonment of his rights" is impossible to determine on the basis of the record made by the plaintiff. The record shows only that the plaintiff gave the *Miranda* explanation and asked the *Miranda* questions and these, of course, from what we have just said, fell far short of article 1, § 20 constitutional requirements. Therefore without any reference to the evidence suppression stipulation and court order, the plaintiff failed to show a valid waiver.

The prosecution relies on *Wyrick v Fields, supra.* That case is not apposite for a number of reasons. First and foremost, *Wyrick* was decided on Fifth not Sixth Amendment grounds. Second, there was no stipulation or court order of evidence suppression. Third, the defendant in *Wyrick* repeated his confession after further *Miranda* warnings. Fourth, the defendant in *Wyrick,* unlike the defendant in this case, upon the advice of counsel, requested the polygraph test.

## VI. CONCLUSION

The decision of the Court of Appeals is affirmed as to the exclusion of defendant's inculpatory statements made in the polygraph interview room following his detachment from the polygraph machine.

Also, I agree with the per curiam opinion upholding the Court of Appeals reversal. Defendant's inculpatory statements made in the polygraph interview room following his detachment from the polygraph machine should have been excluded at the trial since defendant did not knowingly waive his right to counsel in view of the stipulation executed by the prosecution and defense whereby the results of the polygraph examination and opinions drawn therefrom would not be admissible in evidence.