*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 6, 2021

Plaintiff-Appellee,

v

No. 344834
Genesee Circuit Court

KEVIN LIONEL THOMPSON, JR,

LC No. 16-039869-FC

Defendant-Appellant.

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent, because although I do not disagree with the majority's thorough recitation of the facts, I conclude that defendant's waiver of his right to counsel prior to his polygraph examination was not voluntary, knowing, and intelligent under the circumstances. I would remand for a new trial; or, at a minimum, for the trial court to make an express factual finding as to the parameters of the agreement between the defense and the prosecution regarding defendant volunteering to take the polygraph examination.

## I. BASIS FOR REVIEW

Despite the considerable attention given to the issue at oral argument and in the briefs, the majority accurately observes that defendant technically does not directly seek reversal of the trial court's order denying his request to suppress his post-polygraph statements. However, such a request is implicit in his argument and analysis, which is premised upon the effect it would have had on the proceedings if the trial court granted his suppression request. Strictly speaking, this Court need not address an issue not set forth in an appellant's statement of issues presented. See *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). However, "addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle," and "the parties' failure or refusal to offer correct solutions to" an issue does not limit an appellate court's "ability to probe for and provide the correct solution." *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002). "The court is obligated only to review issues that are properly raised and preserved; the court is *empowered*, however, to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and

resolved." *Paschke v Retool Industries (On Reh)*, 198 Mich App 702, 705; 499 NW2d 453 (1993) (emphasis in original), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994). Under the circumstances, it is impossible to resolve defendant's challenge to the effective assistance of counsel without resolving whether there *was* an agreement, whether that agreement was violated, and whether suppression would have been proper on the basis of that violation.

## II. WAIVER IF THERE WAS AN AGREEMENT

It has long been established that prosecutors are bound by agreements they make with the defense, even if those agreements are unwise or disproportionately beneficial to the defense. *People v Reagan*, 395 Mich 306, 313-319; 235 NW2d 581 (1975). I find it inappropriate to treat any violation of such an agreement as irrelevant or trivial, irrespective of defendant's reaction to the violation. Nevertheless, contrary to the position taken by defendant at oral argument, "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent . . . whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo v Louisiana*, 556 US 778, 786; 129 S Ct 2079; 173 L Ed 2d 955 (2009). There is no absolute bar to defendant choosing to waive his right to counsel after having invoked that right, so long as the police do not engage in any custodial "badgering." *Id*. at 794-797. For such a waiver to be voluntary, knowing, and intelligent:

> First, the relinquishment of the right must have been "voluntary," in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*People v Tanner*, 496 Mich 199, 209; 853 NW2d 653 (2014), quoting *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986).]

As the majority notes, Dwyre reviewed defendant's rights with him before commencing the polygraph examination, and defendant executed a waiver. Dwyre did not re-warn defendant of his rights between the end of the examination and the commencement of post-polygraph questioning.

I disagree with the majority that defendant's purported waiver prior to the examination ends the analysis. This Court has held that a waiver executed before a polygraph examination is not effective as to post-polygraph questioning unless the defendant was advised that there would be post-polygraph questioning and the defendant in some way extended the waiver to that post-polygraph questioning. *People v Leonard* (*Leonard I*), 125 Mich App 756, 759-760; 337 NW2d 291 (1983). Our Supreme Court affirmed on alternative grounds, albeit without any apparent criticism of this Court's analysis,[1] because the prosecution and the defense had stipulated to

---

[1] The majority finds CHIEF JUSTICE WILLIAMS's separate concurrence instructive, which is entirely proper, *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411 n 5; 952 NW2d 586 (2020), but I respectfully do not share the majority's assessment of its relevance to this particular matter.

exclude from evidence the polygraph results and the polygraph operator's opinion, and defendant's waiver was unknowing in light of that stipulation. *People v Leonard* (*Leonard II*), 421 Mich 207, 210; 364 NW2d 625 (1984). Our Supreme Court subsequently clarified that no rule mandates that defendants be re-warned of their constitutional rights between the end of a polygraph examination and the commencement of post-polygraph questioning; but, critically, whether a pre-polygraph waiver is valid as to post-polygraph questioning must be evaluated under the totality of the circumstances. *People v Ray*, 431 Mich 260, 276-277; 430 NW2d 626 (1988). Therefore, the context of any purported waiver, including a defendant's understanding of the nature of the examination, is important.

There can be no dispute that some kind of agreement existed for defendant to take a polygraph examination. However, the trial court made only one narrow factual finding as to the terms of that agreement: that there was no agreement for defendant's trial counsel to be present in the room while the polygraph examination took place. Because that finding comports with defendant's trial counsel's later testimony, this finding is obviously not clearly erroneous, so it is binding upon us. See *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Otherwise, the trial court essentially held that the existence of any such agreement was irrelevant because defendant validly waived his right to counsel. I disagree. If there was, in fact, an agreement for counsel to be present during the examination (albeit not in the same room) and for there to be no post-polygraph questioning, I cannot agree that defendant's purported waiver was valid.

I conclude that the trial court clearly erred in failing to find that there was an agreement for defendant's trial counsel to be present during the polygraph examination, albeit not in the same room as the examination. The prosecutor stipulated that the polygraph examination had originally been scheduled for 7:00 p.m., and another assistant prosecuting attorney testified at the suppression hearing that he had been instructed to allow defendant's attorney into the building at that time. The trial court recognized that 7:00 p.m. was after the building would have closed, so counsel could not have obtained entry without someone letting him in, and there would have been no other reason to let counsel in at that time. I find nothing in the record that clearly conflicts with the necessary conclusion that there must have been an agreement in place for trial counsel to be present outside the examination room but during the examination.

Furthermore, defendant testified that he knew he had been scheduled for a polygraph at 7:00 p.m., "but they changed the time and so I really didn't know [what] I was going to court for until [Dwyre] came to see me." Defendant also explained to Dwyre that his sleep was "not so good," and he was averaging only about five hours of sleep a night. In addition to being sleep deprived, defendant started the examination confused and alone, contrary to his reasonable expectations. Our Supreme Court also indicated that a defendant in a weakened mental state, which sleep deprivation would certainly cause, might reflect negatively upon the true voluntariness of a defendant's waiver. *Ray*, 431 Mich at 270-271. The trial court opined that defendant believed his attorney was present outside the room and made no effort to contact his attorney, so for all practical purposes, his attorney may as well have been there. However, after reviewing the polygraph examination and interview, I cannot find any hint that defendant did, in fact, believe his attorney was present outside the room.

Agent Dwyre told defendant before the polygraph examination that he could have his attorney any time he wanted, even offering to allow defendant to use Dwyre's own phone.

Notably, however, defendant explained at the suppression hearing that he did not know his attorney's phone number. Dwyre also commented before the polygraph examination that defendant's attorney had "sent" defendant there, that defendant's attorney completely trusted Dwyre, that he never permitted attorneys into the room, and that "sometimes the attorneys forget about the scheduling and all that." Nothing in this commentary suggests that defendant's attorney was outside; rather, it suggests that defendant was on his own. The fact that defendant would need a phone to contact his attorney necessarily implies that his attorney was *not* just outside the door; and the fact that defendant did not know his attorney's phone number renders the offer of contacting his attorney at any time practically illusory. Although, as the majority notes, it does not appear that defendant told Dwyre he did not know his attorney's phone number, even if defendant had the practical, rather than purely theoretical, ability to call his attorney, doing so would have been significantly more effort than simply walking outside, and thus implicitly discouraged. Furthermore, using Dwyre's phone would have lacked even the slightest pretense of confidentiality.

Importantly, had defendant's attorney arrived with defendant—which would have occurred if Dwyre had not unilaterally changed the time of the exam without notice to anyone—defendant would have actually known his attorney was present. Not only would this be of immense psychological benefit, but his attorney could have reminded defendant not to answer post-polygraph questions and confirmed with Dwyre the terms of the agreement. The presence of counsel is an important consideration when evaluating voluntariness, and, in direct contrast to the situation here, our Supreme Court has indicated a defendant will not be considered "isolated from counsel" where the defendant and counsel arrived together, counsel was present in the building throughout the examination, and the defendant made no allegation that he was questioned "beyond what was expected or agreed upon." *Ray*, 431 Mich at 277. Irrespective of whether there was an agreement regarding post-polygraph questioning, Dwyre's unilateral and unannounced rescheduling was a breach of the agreement with practical consequences to defendant's psychological state and ability to realistically invoke or waive his right to counsel.

To make matters worse, the context in which Dwyre explained defendant's rights and obtained a waiver was unambiguously indicated that the waiver was for the purpose of receiving a polygraph examination, not a custodial police interview. Even if there had been no agreement regarding post-polygraph questioning, Dwyre never conveyed to defendant that he might be waiving his rights for any purpose other than the polygraph examination. In *Ray*, our Supreme Court regarded as important whether a defendant clearly understood the distinction between the polygraph examination itself and questioning after the polygraph examination. *Ray*, 431 Mich at 267-268. Notably, the manner in which Dwyre continued questioning defendant after seemingly concluding the polygraph examination undermined and blurred any clear indication where the exam ended and the interview began. Even if defendant was technically an adult, by all of four months, he was young and inexperienced in addition to being alone and sleep-deprived. It is, as a consequence, difficult to imagine how defendant's purported waiver could possibly have been voluntary, knowing, and intelligent as to the post-polygraph interview, even if there had not been an agreement that no such interview would occur. If there had been an agreement regarding post-polygraph questioning, then defendant's initial waiver would have been even more unknowing.

I further note that Dwyre made various promises that were simply not his to make. He promised defendant that the prosecutor would drop the charges if Dwyre told the prosecutor that

defendant did not commit the charged crimes; Dwyre had absolutely no such authority. The prosecutor testified that it was fairly probable that if defendant passed the polygraph, he would be offered some kind of favorable plea or possibly dismissal, but that even she did not have the authority to make that decision; implicitly, there were no guarantees. The police are permitted to lie to defendants during interviews about factual matters, but not about matters that "deprive[] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v Burbine*, 475 US 412, 423-424; 106 S Ct 1135; 89 L Ed 2d 410 (1986). Standing alone, such a promise might not be sufficiently egregious to undermine defendant's ability to validly exercise or waive his rights, but I believe it must be considered in context. Likewise, Dwyre promised defendant that the examination, and the post-examination questioning by necessary implication, was not being recorded in any way. This was also a lie that would have undermined defendant's perception of the nature of his interaction with Dwyre and, consequently, "his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* Again, even if this deceit would not have undermined defendant's waiver by itself, it was a contributing factor.

It was clearly erroneous for the trial court not to find that there was an agreement for trial counsel to be present for the polygraph examination, albeit not in the same room. I am unable to find the same degree of fault in the trial court's failure to make a factual finding at the suppression hearing whether there was an agreement for there to be no post-polygraph questioning, given trial counsel's tactical decision that defendant would suffer less harm by counsel continuing to represent defendant instead of calling himself as a witness to testify. Nevertheless, after the *Ginther* hearing, the trial court should have made such a factual finding, because the testimonies of the trial attorneys constituted evidence, and the trial court is situated to resolve their factual disagreement. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). I would find that at a minimum, this Court should remand for the trial court to make that determination. However, I would find that defendant's waiver of his right to counsel was not voluntary, knowing, and intelligent under the circumstances, irrespective of whether there was an agreement as to post-examination questioning. If there was such an agreement, then Dwyer's violation of the agreement would be all the more egregious.

III. OTHER ISSUES

I agree with the majority that the trial court abused its discretion by excluding Boone's proposed alibi testimony on the apparent ground that it believed it lacked discretion to admit the testimony. See *People v Merritt*, 396 Mich 67, 80; 238 NW2d 31 (1976). I do not disagree that *if* evidence of defendant's post-polygraph statements had been properly admitted, defendant could not establish that exclusion of the alibi testimony affected the outcome of the proceedings. However, I do not agree that the post-polygraph statements were properly admitted. I am therefore unpersuaded that the exclusion of the alibi testimony was harmless. Although, as the majority notes, this Court previously denied defendant's motion to remand for a *Ginther* hearing regarding trial counsel's failure to provide timely notice of the alibi testimony, this Court may always reconsider that denial after plenary review. See *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044), slip op at p 10. Furthermore, this Court should consider materials outside the record for the purpose of whether to remand the matter for an evidentiary hearing, especially where a defendant preserved a request for such a hearing. *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013). I would grant defendant's request to remand for a

second *Ginther* hearing regarding counsel's failure to provide timely notice of the alibi testimony. Conversely, I concur with the majority's analysis of Walker's testimony regarding statements made by Lay.

## IV.  CONCLUSION

I respectfully disagree with the majority that defendant validly waived his right to counsel as to the post-polygraph questioning.  Consequently, I would grant defendant a new trial on that basis, even if defendant does not expressly ask for relief on that specific basis.  At a minimum, I would remand to the trial court to make a factual determination of the parameters of the agreement between the defense and the prosecution for defendant to take the polygraph; with the caveats that there clearly was an agreement for trial counsel to be present in the building during the examination, and I am unpersuaded that a specific agreement as to post-polygraph questioning would affect anything other than the egregiousness of Dwyer's conduct.  I would also remand for a *Ginther* hearing regarding trial counsel's failure to provide timely notice of the proposed alibi testimony.

/s/ Amy Ronayne Krause